UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Case No. 13-11132-MER |
| LSI RETAIL II, LLC | ) | Chapter 11 |
| EIN:  20-0741627 | ) | |
|   Debtor | ) | |
| _____ | ) | |
| | ) | |
| In re: | ) | |
| | ) | Case No. 13-11135-MER |
| CONIFER TOWN CENTER, LLC | ) | Chapter 11 |
| EIN:  20-1517101 | ) | |
|   Debtor | ) | |
| _____ | ) | |
| | ) | |
| In re: | ) | |
| | ) | Case No. 13-11167-MER |
| LAND SECURITIES INVESTORS, LTD., | ) | Chapter 11 |
| EIN:  84-1021913 | ) | |
|   Debtor | ) | |
| | ) | **JOINTLY ADMINISTERED UNDER** |
| | ) | **CASE NO. 13-11132-MER** |

**DISCLOSURE STATEMENT TO ACCOMPANY
CHAPTER 11 JOINT PLAN OF REORGANIZATION**

This Disclosure Statement ("Disclosure Statement") has been prepared by LSI Retail II, LLC, ("LSI Retail"),   Conifer Town Center, LLC ("CTC"), and Land Securities Investors, LTD ("LSI")(collectively the "Debtors"), to accompany their Chapter 11 Joint Plan of Reorganization dated May 24, 2013 ("Plan") which was filed in the above-referenced Chapter 11 cases.  This Disclosure Statement is being provided to all creditors and interest holders of LSI Retail, CTC and LSI.  This Disclosure Statement is subject to approval pursuant to 11 U.S.C. § 1125 by the United States Bankruptcy Court for the District of Colorado as containing adequate information to enable creditors and interest holders to determine whether to accept the Debtors' Plan. The Court's approval of this Disclosure Statement does not constitute a decision on the merits of the Plan.  Issues related to the merits of the Plan and its confirmation will be the subject of a confirmation hearing which is scheduled for _____, 2013 at _____.m. at the **United States Bankruptcy Court,**

Byron Rogers Courthouse, 1929 Stout Street, Courtroom C-___, Denver, Colorado 80202.

THIS DISCLOSURE STATEMENT HAS BEEN NEITHER APPROVED NOR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION. THE COMMISSION HAS SIMILARLY NOT REVIEWED THE ACCURACY OR ADEQUACY OF THIS DISCLOSURE STATEMENT.

This Disclosure Statement is provided to you along with a copy of the Debtors' Plan and a Ballot to be used for voting on the Plan. Please complete the Ballot according to the instructions contained on the Ballot if you intend to vote for or against the Debtors' Plan. Each creditor or interest holder may vote on the Plan by completing the enclosed Ballot and returning it to counsel for the Debtor, Land Securities Investors, Ltd., at the address set forth below:

> Lee M. Kutner
> Kutner Miller Brinen, P.C.
> 303 East 17th Avenue, Suite 500
> Denver, Colorado 80203
>
> Email: lmk@kutnerlaw.com

The Court set _____, 2013 as the last day to vote on the Plan (the "Balloting Deadline"). Accordingly, the Ballot must be received by Kutner Miller Brinen, P.C. no later than the Balloting Deadline. Capitalized terms contained in this Disclosure Statement that are defined in the Plan have the same meaning as set forth in the definitional section of the Plan.

**Recommendation**. As set forth below, Debtors firmly believe that the Plan represents the best alternative for providing the maximum value for creditors. The Plan provides creditors with a distribution on their Claims in an amount greater than any other potential known option available to the Debtors. **Debtors strongly believe that confirmation of the Plan is in the best interest of creditors and recommend that all creditors entitled to vote on the Plan vote to accept the Plan.**

**Voting Requirements.** Pursuant to the Bankruptcy Code, only Classes of Claims or Interests that are "impaired" under the Plan are entitled to vote to accept or reject the Plan. Classes of Claims and Interests that are not impaired are not entitled to vote and are deemed to have accepted the Plan. Voting on the Plan shall be pursuant to the provisions of the Bankruptcy Code and the Bankruptcy

Rules, and a Class shall have accepted the Plan if the Plan is accepted by at least two-thirds in amount and more than one-half in number of the Allowed Claims of such Class actually voting.

**The Debtors' Plan is a joint Plan for the three Debtors.  The cases are jointly administered but they are not substantively consolidated.  The creditors of each case will vote on the provisions particular to their case under the Plan.  The creditors of LSI Retail will vote on the portion of the Plan applicable to LSI Retail, Classes 1.1 – 1.7, the creditors of CTC will vote on the portion of the Plan applicable to CTC, Classes 2.1 – 2.6, and the creditors of LSI will vote on the portion of the Plan applicable to LSI, Classes 3.1- 3.12.  It is not a requirement of the Plan that the Plan be confirmed in all three cases for it to become effective in a particular case.  The Plan may be confirmed in three or less cases.  If confirmed any one or more cases it will only be effective in the cases in which it is confirmed.**

**Voting Classes**.  Each of the Classes set forth in the Plan are impaired with the exception of Classes 3.9, 1.7, 2.6, and 3.11and shall be entitled to vote to accept or reject the Plan.

**Deemed Acceptance of Plan**.  Unimpaired classes are conclusively presumed to accept the Plan pursuant to 11 U.S.C. § 1126(f).  Classes 3.9, 1.7, 2.6, and 3.11are unimpaired by the Plan.

**Deemed Rejection of Plan**.  Classes that receive and retain nothing under the Plan are deemed to reject the Plan pursuant to 11 U.S.C. § 1126(g).  No class will receive nothing under the Plan and therefore there are no classes deemed to have rejected the Plan.

**One Vote Per Holder.**  If a holder of a Claim holds more than one Claim in any one Class, all Claims of such holder in such Class shall be aggregated and deemed to be one Claim for purposes of determining the number of Claims voting for or against the Plan.

## I.      CHAPTER 11 AND PLAN CONFIRMATION

Chapter 11 of the United States Bankruptcy Code is designed to allow for the rehabilitation and reorganization of financially troubled entities or individuals.  Chapter 11 allows debtors to retain their assets during administration of their Chapter 11 case as debtors-in-possession and, following confirmation of a Plan, as reorganized debtors pursuant to the Plan.  Once the Court has approved a Plan of Reorganization, the Plan of Reorganization constitutes the permanent restructuring of

debtor's financial obligations.  The Plan provides a means through which the Debtors will restructure or repay their obligations.

The Plan of Reorganization divides creditors into classes of similarly situated creditors.  All creditors of the same Class are treated in a similar fashion.  All member Interests are also classified and treated alike.  Each Class of creditors or interest holders is either impaired or unimpaired under the Plan.  A Class is "unimpaired" if the Plan leaves unaltered the legal, equitable, and contractual rights to which each creditor in the class is entitled.  Alternatively, a claimant is "unimpaired" if the Plan provides for the cure of a default and reinstatement of the maturity date of the claim as it existed prior to the default.

The Debtors each filed a motion requesting the Court set a bar date for filing claims and requests for allowance of administrative expense claims under 11 U.S.C. § 503(b)(9).  In the LSI case, the Bankruptcy Court set a bar date establishing the last date for filing Proofs of Claim as May 20, 2013.  In the LSI and CTC cases the bar date for filing claims was also set for May 20, 2013. The Plan provides that Claims of all Classes shall be allowed only if evidenced by a timely filed Proof of Claim or which otherwise appear in Debtors' Schedules and are not scheduled as disputed, contingent, or unliquidated unless subsequently allowed by the Court.  Creditors may ascertain whether their claims have been scheduled as disputed, contingent, or unliquidated by reviewing the Debtors' Schedules and amendments thereto filed with the Bankruptcy Court.  Alternatively, creditors may contact Debtors' counsel directly to determine how their claims have been scheduled.

Chapter 11 does not require that each holder of a Claim against or Interest in the Debtors vote in favor of the Plan in order for the Court to confirm the Plan.  The Plan, however, must be accepted by at least one impaired Class of Claims by a majority in number and two-thirds in amount (excluding insider acceptance) of those Claims of such Class actually voting on the Plan.  Assuming one impaired Class votes to accept the Plan, it may be confirmed over its rejection by other Classes if the Court finds that the Plan does not discriminate unfairly and is fair and equitable with respect to each Class of Claims or Interests that is impaired under and has not accepted the Plan.

If all Classes of Claims and Interests vote to accept the Plan, the Court may confirm the Plan. Section 1129 of the Bankruptcy Code sets forth the requirements for confirmation.  Among other things, Section 1129 requires that the Plan be in the best interest of the holders of Claims and

Interests and be feasible through a showing that confirmation will not be followed by the need for further financial reorganization of the Debtor.

Each class of creditors who is impaired will have an opportunity to vote on the Plan. In the event the requisite majority of each class votes to accept the Plan, the Plan will be deemed accepted by the subject class. If a class of creditors votes to reject the Plan, the Plan may be confirmed over the rejection of the class pursuant to 11 U.S.C. § 1129(b).

## II.    OVERVIEW OF THE PLAN AND MEANS OF EXECUTION

The following is a summary of all classes of Claims and Interests other than those Claims of a kind specified in 11 U.S.C. §§ 507(a)(2), 507(a)(3), or 507(a)(8).

**LSI Retail**

| Class | Impairment | Treatment |
|---|---|---|
| 1.1- Priority Claims in Section 507(a)(4) and (5) | Unimpaired | 100% Distribution. No Class 1 claims exist. |
| 1.2- 3NP | Impaired | The Class1.2 Claim shall be allowed in the full amount due on the Confirmation Date and paid monthly interest only at 3% per annum, with a 7 year balloon. |
| 1.3.1 and 1.3.2 Douglas County or assignee | Impaired | The Class 1.3.1 and 1.3.2 Claims shall be allowed in full and amortized and paid at the statutory rate over a period of 60 months from the petition date. |
| 1.4- State Farm Life Insurance Co. | Impaired | The Class 1.4 Claim shall be allowed in the principal amount of $9,500,000 or as otherwise set by the Court, and paid monthly based on an amortization over 25 years at 3% interest, or as otherwise set or agreed. A balloon payment will be due on the 7 year anniversary of confirmation. |

| | | |
|---|---|---|
| 1.5- Unsecured creditors other than Classes 1.6.1-1.6.6 | Impaired | Amortized over 10 years and paid in full in monthly payments at 1% per annum with 7 year balloon. |
| 1.6.1- Mike's Building Maintenance, LLC<br>1.6.2- Colorado Mechanical Systems Inc.<br>1.6.3- Colorado Lighting Inc.<br>1.6.4- Always Green LLC<br>1.6.5- Schindler Elevator Corp.<br>1.6.6- Liquid Environmental Solutions | Impaired | Contracts will be cured within 180 days and paid in the ordinary course of business. |
| 1.7- Interests held by members | Unimpaired | Retained by owners |

### CTC

| Class | Impairment | Treatment |
|---|---|---|
| 2.1- Priority Claims in Section 507(a)(4) and (5) | Unimpaired | 100% distribution. No Class 2.1 claims exist. |
| 2.2- Jefferson County or assignee | Impaired | The Class 2.2 Claims shall be allowed in full and amortized and paid at the statutory rate over a period of 60 months from the petition date. |
| 2.3.1and 2.3.2- Mountain Rising Development | Impaired | Class 2.3.1 and 2.3.2 Claims shall be fixed at $3,000,000 or as set by the Court, amortized over 25 years at 3.25%, with a 7 year balloon. |
| 2.4- Unsecured Creditors | Impaired | Amortized over 10 years and paid in full in monthly payments at 1% per annum with 7 year balloon. |
| 2.5.1- Mikes Building Maint.<br>2.5.2- Century Link<br>2.5.3- ADT/Tyco Security<br>2.5.4- Systems Group<br>2.5.5- Thyssenkrup Elevator<br>2.5.6- Liquid Environmental | Impaired | Contracts will be cured within 180 days and paid in the ordinary course of business. |

6

| 2.6- Interests held by members | Unimpaired | Retained by owners |
|---|---|---|

**LSI**

| 3.1- §507(a)(4 and 5) claims | Unimpaired | 100% distribution. No Class 3.1 claims exist. |
|---|---|---|
| 3.2- 3NP | Impaired | The Class 3.2 Claim shall be allowed in the full amount due on the Confirmation Date and paid monthly interest only at 3% per annum, with a 7 year balloon. |
| 3.3- Alden Financial Inc. | Impaired | The Class 3.3 Claim shall be allowed in the full amount due on the Confirmation Date and paid monthly interest only at 3% per annum, with a 7 year balloon. |
| 3.4- Douglas County Treasurer or assigns | Impaired | The Class 3.4 Claims shall be allowed in full and amortized and paid at the statutory rate over a period of 60 months from the petition date. |
| 3.5.1- 3.5.4 Mountain Rising Development | Impaired | Class 3.5.1 - 3.5.4 Claims shall be fixed at $3,920,000 or as set by the Court, amortized over 25 years at 3.25%, with a 5 year balloon. |
| 3.6- Jefferson County Treasurer or assigns | Impaired | The Class 3.6 Claims shall be allowed in full and amortized and paid at the statutory rate over a period of 60 months from the petition date. |
| 3.7- Larimer County Treasurer or assigns | Impaired | The Class 3.7 Claims shall be allowed in full and amortized and paid at the statutory rate over a period of 60 months from the petition date. |
| 3.8- TIC Lending, LLC | Impaired | Claim will be amortized and paid in monthly payments over 60 months at 2% per annum. |
| 3.9- UMB Bank | Unimpaired | Paid per terms of note |

| 3.10- Unsecured Creditors | Impaired | Amortized over 10 years and paid in full in monthly payments at 1% per annum with 7 year balloon. |
| 3.11- Interests | Unimpaired | Retained by owners |

## III.   BACKGROUND AND EVENTS LEADING TO CHAPTER 11 FILINGS

LSI was started in the early 1980's and was created by the settlor of the Dick Family Trust I and Dick Family Trust II, Richard Wigley. The two Trusts hold 99% of the ownership in the Debtor partnership. The holdings of LSI have always consisted of undeveloped land and over the years parcels of land were purchased through equity infusions into LSI from the two Trusts. During the period prior to June of 1995 the General Partner of LSI was York Management which was owned by Raymond Near.

In 1995 a Settler of the Estate, Richard Wigley, brought in Alan Fishman to entitle and develop different parcels of land owned by LSI. Alan Fishman formed his own company called Sunset Management Services Inc. (SMSI). SMSI became the general partner and replaced York Management and Alan Fishman became trustee of the two Trusts. This change took effect in June of 1995.

Over the next few years several projects were undertaken. Chatfield Bluffs was a 200 acre parcel at the intersection of Kipling and Ute Ave, Littleton Colorado in Jefferson County. This parcel was zoned and platted into approximately 500 single family lots. Approximately 100 of these lots were sold to Engle Homes in phases and approximately 400 lots were sold to Ryland Homes in phases. This project was completed by 2000.

The next project was the Jefferson Corp Center and final plats were done in 1995 and divided the 100 acres consisting of three super lot plats. This property is at the intersection of Kipling and C-470 in Littleton Colorado, Jefferson County. On lot two there was a 70,000 square foot office building designed on about 5 acres of ground. The building was to be built for speculation but a construction company named Washington Construction bought the property, redesigned it, and built the vertical construction. A second smaller parcel was bought by a hotel group and the Marriott Town Suites was built on that parcel. All of these separate parcels were created by plat exemption to

8

the super lot plat.  A third 5 acre parcel was created and a 70,000 square foot building was designed and built by a related company called LSI I LLC.  The land was contributed free of encumbrances to the Company as equity.  An additional $750,000 in cash was also contributed to the Company. During the construction process the building was 100% leased to a company called HSA which was a new company providing internet connections.  This project was completed in 1998.  HSA was acquired by Paul Allen of Microsoft and a lease buy out was completed in 2003.  It was then decided that this building be multi tenanted and over the years it has been maintained at about an 80% plus occupancy level.  LSI has retained a 64% interest in this building.  LSI also did three land leases for four cell towers on the 100 acre site known as Jefferson Corporate Center.  The land leases are still in existence and generate monthly revenue.

The next project was on a three acre parcel at the corner of Chatfield and Kipling roads in Littleton where a land lease was done with Conoco Gas Company this was done in 1997.  Since it was a land lease it was left in LSI where it continues to exist.

Another LSI project was the Jefferson Market Place at the corner of Kipling and Chatfield in Littleton on approximately 30 acres.  This shopping center was built by contributing the land free and clear to a newly formed company named LSI Retail I LLC.  This shopping center was built in two phases.  When the second phase was built financing was required so a second company was created called LSI Retail III LLC.  The first phase was transferred into the new LSI Retail III LLC with LSI Retail I LLC retaining 100% ownership of the new company.  A 20 year fully amortized conduit loan was placed on the first phase.  FNB Bank of Boulder provided construction  financing  and then a five year loan was obtained from Merrill Lynch to take out FNB Bank loan.  This loan is due in October of 2013.

LSI then completed a plat on just under 400 acres at Waterton Canyon Road and Rampart Range Road in Littleton, in Douglas County.  Three residential projects consisting of Filing 1A and Filing 2A and 11 commercial pads were created.  One of the commercial pads resulted in a land lease with Royal Crest Dairy for a gas station convenience store.  This was accomplished at a cost of $800,000 by moving part of Waterton Road as it did not meet safety standards.  This needed to be done before any commercial or residential development could be undertaken. The location of these improvements is at the intersection of Waterton Canyon Road and Rampart Range Road in Littleton,

9

in Douglas County.

The residential development in Filing 1A consists of approximately 120 small single family lots and 29 large estate lots over 1 acre with ability on some of the lots to have horses. The smaller single family lots were sold to Ryland Homes under phases and sold out quickly. Filing 1B were all small lots sold to Ryland Homes and again sold out quickly in a strong market. The estate lots were held for much higher prices and did not sell due in part to the fact that vacant residential lots get taxed at the commercial rate and values were so high LSI could not pay the taxes timely. LSI could not get the values reduced on the lots as the county uses two and three year old sales data that kept the values high. Since there were almost no lot sales LSI could not remain current on its $3 million land loan and taxes. LSI believes that with the economy now starting to move forward and housing getting stronger it can sell these lots to pay off the taxes and its debt plus provide cash flow to pay other debt. LSI has 23 lots to sell in this project. LSI is in the process in putting this property under contract with a purchaser. The owner of the note secured by this property is 3NP.

Another project created by LSI was the Roxborough Market Place. This project was developed by LSI Retail II LLC and is also at the corner of Rampart Range Road and Waterton Canyon in Littleton, Douglas County. This project was developed into an over 80,000 square foot shopping center. The land was free and clear of liens and worth approximately $1,000,000, was contributed to LSI Retail II LLC and LSI retained 99% ownership. The original construction loan was with FNB Bank of Boulder and the final lender was State Farm Insurance. When State Farm provided the loan commitment LSI needed to add the Farm Crest land lease into the project but was still short by $450,000. FNB Bank of Boulder agreed to leave the balance on a vacant pad, State Farm did not take the pad as collateral, and LSI closed the loan for $13.2 million. LSI Retail II LLC filed its Chapter 11 case in January 2013 in order to prevent the lender from recording the deed held in escrow due to the filing of bankruptcy of LSI one of its loan guarantors. This project has gone under several modifications due to the falling economy.

LSI sold a corner parcel at Waterton Canyon and Rampart Range Road (NW corner) to Walgreens when LSI signed the Safeway Lease.

In 1997 LSI purchased a 13 acre parcel from Raymond Near on the Arrow Head Golf Course, this ground has not had a final plat but is zoned for 13 residential lots or 140 multi housing units.

10

LSI also developed a day care center in 2008 which was a rental deal that sold in 2012 to the owner of Little Peoples landing. This was done on one of the 11 commercial parcels at Waterton and Rampart Range Road in Littleton, Douglas County.

LSI owns a 55 acre parcel in Larimer County in Loveland Colorado on Highway 60. This parcel was purchased in the early 1980's and was permitted for 240 mobile homes. When the project went to be built Larimer County canceled LSI's permit and a 7 year action took place. LSI finally prevailed in 1997 at the appellate court level. LSI owns this parcel and plans to put it on the market for sale.

LSI owns an approximately 80% interest in Centennial Village LLC which is a 20 plus acre parcel on 1st and Taft on the northwest corner in the City of Loveland. This parcel was to be a shopping center with multi housing. LSI had a Kings Supper grocer and Conoco gas station land lease signed up. The process was taking so long in the city of Loveland that LSI lost both tenants and the City of Loveland placed 80% of the property as a spill way for the river that was to the north of the property.

Sometime during the late 1980's an investment with the Dyke family out of Fresno California was completed. $3.7 million was loaned to them to develop different parcels of land in Fresno and surrounding areas. The entity at that time was America Properties. Sometime in 1996 Alan Fishman was introduced to Velma Dyck who after the death of her husband took over American Properties. Alan Fishman found no partnership agreement and many properties were bought and sold but no distribution was made to LSI. Velma Dyck made an offer to LSI for $1.5 million to buy LSI out. After a full audit by Alan Fishman it was decided to pursue action against Velma Dyck and American Holdings. The litigation settled out in 2005. A new entity was formed call APH LLC and LSI has a 58.4% interest in that company. To date LSI has received a little less than $4 million. LSI anticipated seeing in excess of $3 million dollars over three years.

Over almost three decades LSI has maintained its existence by land sales. LSI has always supplemented its cash flow needs through land sales. LSI had too much debt on non-income property when the economy started to go down and with commercial tax rates on platted vacant land and no land sales, LSI was placed in a difficult position with its creditors. LSI believes that with the economy bottoming out and housing market strengthening it can put the following projects under

contract.  The Conoco Gas station parcel at Kipling and Chatfield, the 23 Estate Lots on Waterton Road Littleton Colorado, the Park county land that was joint ventured with Ryland Homes and a distribution from APH LLC in Fresno for lot sales.


**CTC**

In 2004 LSI partnered with Village of Elk Crossing LLC to develop the Conifer Town Center.  The Center was platted and a land lease was created for Safeway Grocery.  The Company built Safeway a life style grocery store with 70,000 square feet to anchor the center on Highway 285 in Conifer, Colorado in Jefferson County.  For a few years the center was doing well and was over 80% leased.  When the economy deteriorated the Heidi's Deli, a tenant, filed bankruptcy, the day spa tenant also filed bankruptcy, and the bank tenant moved out when their leased expired and several smaller tenants also moved out.  CTC was not able to service its debt and it tried to negotiate with its loan servicer and special servicer to change the terms of its loan.  CTC could not get a deal done so it lost the center in September of 2011 to foreclosure.  LSI lost $2.5 million in equity.  LSI still owns an interest in CTC which continues to own five vacant parcels consisting in part of: 1) a restaurant building that is 40% leased as a tavern, 2) a building that was built for Starbucks, and 3) a vacant Chile's building that continues to pay rent under its land lease.  This property was mortgaged to 1st Bank under approximately $7.2 million in debt.  These notes were sold to MRD for $5 million dollars and MRD's collection efforts caused CTC to file for bankruptcy relief under Chapter 11.

In or about 2003 LSI partnered with one of its home builders Ryland Homes, so it could develop a 400 acre parcel in Pine Junction, Colorado.  This property was acquired without financing and each partner has about $3.8 million into the project as equity.  LSI formed a partnership called Land Securities VI LLC of which it owns 80% and two other individuals own 10% each.  This entity owns 50% of Pine Ridge Development LLC.  This project is in the process of being sold.

In 2004 when LSI Conifer I, LLC ("LSIC") entered into the leases with Safeway for the Conifer Town Center it agreed to purchase their existing center in Conifer for approximately $6 million.  LSIC borrowed the funds for this project from FNB Bank of Boulder.  LSIC renovated the old Safeway Store into three separate spaces and signed leases with Staples, Checkers and a

hardware store operator. LSI owned 55% of that project and had a million in equity into that project. When the hardware store operator filed bankruptcy and liquidated he owed LSIC over a million dollars. LSIC could not negotiate a reduction in its $10 million plus loan or interest relief. LSIC purchased its guarantees back and the Bank sold the loans to a third party for $4.4 million which was the same amount that was offered the Bank. The new owners acquired the property by deed in lieu of foreclosure and LSIC lost its equity.

LSIC also purchased from a bank a foreclosed residential parcel on Light Lane in Conifer, Colorado through an entity named Conifer II LLC. This parcel is 47 acres with a house and water rights. This parcel was to be jointly developed with a parcel that the owners of Village of Elk Crossing own 49 acres. This development never happened.

## LSI Retail II LLC- Roxborough Market Place

This entity owns a developed parcel or property in Littleton, Colorado, Douglas County, which was part of an almost 200 acre rezoning and platting project. This project was done in the late 1990's. The project was originally zoned in the 1950s as an industrial property. LSI Retail went to the county with a land lease from Kiewit to move their batch plant to the location. The county thought it would be better to have housing and commercial and it was zoned accordingly.

The process was completed in two years and the company ended up with two residential parcels, Filing 1A and Filing 1B and 9 commercial lots. Roxborough Market Place consisted of 8 of those lots which were contiguous. In order to build anything the company had to realign Waterton Canyon Road as there were site distance problems at the intersection of Waterton Canyon and Rampart Range Road. Once this was completed, at a cost borne in full by Land Securities Investors LTD, the company entered into a contract for lease of the corner lot of Roxborough Market Place at the Rampart Range Road SW corner with Robinson Diary we ended up with a land lease and they built the gas station, car wash and convenience store. Safeway later bought out Robinson Dairy when they were had financial problems and needed to raise capital.

In order for LSI Retail to build the center it needed a grocery anchor so it could get the project funded. LSI Retail met with the two leading grocers King Soopers and Safeway. King Soopers made an attractive offer to tie the ground up but would not commit to build the store. So

13

with the help of one of the Douglas County Commissioners LSI Retail got a deal done with Safeway. The base rental rate was the lowest in the Safeway chain for Colorado, at that time, so LSI Retail needed to have the pad sites help make up the difference. The big reason for this was Roxborough at the time only had 3,000 dwelling units in the area and had light demographics. With Safeway signed to the project, LSI Retail's Brokers got land lease deals done with Sonic and Chase Bank. Once these leases were signed LSI Retail was able to get construction financing with FNB Bank of Boulder. LSI Retail also had in its design about 20,000 square feet of second floor office space which it thought would be easily leased as there was no other office space in the area. LSI Retail then got Douglas County Library to sign a long term lease for 5,000 square feet of the office space and a local dentist to take about 2,000 square feet of the office space. The retail space filled up quickly and was about 80% leased when Safeway opened in early 2005. The center opened and Safeway did well for the area.

LSI Retail then had problems finding financing to take out its construction financing. With the help of Johnson Capital, a lender was located, State Farm Insurance Co. ("State Farm"). They provided a reasonable offer but LSI Retail needed to add the Farmcreast Land lease into the collateral. State Farm would only advance $13.2 million with the existing collateral, which left LSI Retail short by $450,000. To make this work LSI Retail took one vacant pad on Waterton Road and left it as collateral with FNB Bank who kept a $450,000 loan on the parcel. LSI Retail then closed with State Farm and paid off its construction loan.

The part that was difficult for the small retail tenants in the project was that they needed to get the community to support the center for them to survive. With the completion of two affiliated housing communities, Chatfield Farms Filing 1A and 1B and two other projects done by Ryland Homes, the center marginally progressed meeting all of its obligations. In order for LSI Retail to get water and sewer from Roxborough Water and Sewer District it had to create commercial rates since it was thought that there would never be any commercial construction in Roxborough. Support for the center lagged and it lost smaller tenants, including two pizza restaurants, a real estate broker's office, insurance brokers office, children's' store, Curves for women, Heidi's Deli and a Karate school. This happened while the economy was still strong. The loss of tenants forced LSI Retail to ask for modification of its loan with State Farm. Two modifications were obtained and with the last

one, State Farm was provided a deed in escrow that could be recorded in lieu of foreclosure if LSI Retail did not perform, State Farm could just record the deed.  By this time the economy was sinking quickly and the Roxborough community was hit hard with foreclosures and residents cutting back.

The modification helped the project survive and as the economy bottomed out the project was able to attract new tenants, Remax Brokers, Subway, Waterton Tavern, Wine bar, and as part of the last modification Sunset Management agreed to move its office into the second floor.  During the modification period LSI Retail made all of its payments timely and was financially stable.  The new problem was that the project began to see new rental rates much less than its original triple net rental rate of $24 per square foot.  New rates were at $14 to $16 a square foot and existing tenants were asking for concessions and tenants who were coming up for renewal would be getting lower rates.  As a result, another modification from State Farm was required and the loan guarantor, LSI filing bankruptcy due to its own problems with its lenders coupled with the deed in escrow that State Farm held, LSI Retail needed to file for relief under Chapter 11.

## IV.     DESCRIPTION OF ASSETS

The following is a brief description of the Debtors' assets.  Further information on the Debtors' assets can be found in the bankruptcy Schedules A and B, and amendments thereto filed in each case.

A.      **LSI Assets**

| ASSET | ESTIMATED VALUE |
|---|---|
| Jefferson Corp. Center, Lot 2D (20 acres) | $3,920,400 |
| Jefferson Corp. Center, Lot 3E (21.23 acres) | $5,086,283 |
| Jefferson Corp. Center, Lot 1, (6 acres) | $1,117,314 |
| 3 acres at Chatfield & Kipling, Littleton, CO | $1,200,000 |
| 4.5 acre lot, Waterton Rd., Roxborough, CO | $490,000 |
| 55 acre parcel, Promontory Park, Larimer Cty, CO | $1,250,000 |
| Chatfield Farms Estate, Lot 5 (23 lots) | $2,990,000 |

| | |
|---|---|
| PA-13, 13 acres on Arrowhead golf course | $764,478 |
| Interests in various entities (See Exhibit A, B14) | $12,950,000 |
| Bank Accounts (estimated balances) | $50,000 |
| **TOTAL** | **$29,768,475** |

**B.    LSI Retail Assets**

| ASSET | ESTIMATED VALUE |
|---|---|
| 8351-8361 Rampart Range Rd., Littleton, Colorado- Shopping center | $10,400,000 |
| 1.2 acres on Waterton Canyon Rd. | $500,000 |
| Security Deposit (Xcel Energy) | $11,609 |
| Account balance (petition date) | $86,227 |
| Accounts Receivable | $115,197 |
| **TOTAL** | **$10,713,033** |

**C.    CTC Assets**

| ASSET | ESTIMATED VALUE |
|---|---|
| 27175 Main St., Conifer, Colorado Shopping center and pad sites | $3,000,000 |
| Deposits (IREA, Jefferson County) | $60,106 |
| Accounts Receivable | $12,855 |
| Settlement receivable | $239,000 |
| **TOTAL** | **$3,311,961** |

The assets listed above for the Debtors reflect gross values and do not reflect liens that encumber the assets. Many of the assets owned by the Debtors are encumbered by the claims of

several secured creditors.  In all three cases, the net realizable value for creditors is dependent upon the Debtors' ability to manage their assets and sell the assets in order to realize equity that exists in the assets.  The creditor claims are described later in this Disclosure Statement.

     **D.**     **Avoidance Actions**.

     Avoidance Actions constitute claims against creditors or insiders pursuant to 11 U.S.C. §§ 545 through 550 or state law fraudulent conveyance actions.  The Debtors are reserving the right to bring Avoidance Actions pursuant to 11 U.S.C. §§ 545 through 550 and state and bankruptcy fraudulent conveyance actions.  The Debtors are currently in the process of evaluating these claims to determine which, if any, claims are viable.  In the LSI case, LSI appears to be solvent and solvency is a defense to many Avoidance Actions.  This is not the case in the cases of LSI Retail II and CTC, however the payments that are subject to review in these two cases are very small in number.

     Debtor's analysis indicates that certain payments were made in the ordinary course of business and therefore are subject to defense pursuant to 11 U.S.C. § 547(c)(2); were contemporaneous transfers and therefore subject to defense pursuant to 11 U.S.C. § 547(c)(1); or were setoffs and subject to defense pursuant to 11 U.S.C. § 553.  With respect to payments to insiders, the compensation was reasonable compensation for services rendered.  The Debtors expect that the recovery to creditors as proposed under the Plan will exceed any reasonable recovery that could be obtained solely from pursuit of the Avoidance Actions, if any.

     **V.**     **DESCRIPTION OF LIABILITIES**

**A.**     **Priority Claims**

     Priority Claims are defined in the Plan as any pre-petition Claim entitled to a priority payment under 11 U.S.C. § 507(a), excluding any Administrative Claim or Tax Claim.

     **1.**     **Administrative Claims**

     Administrative Claims are those Claims for payment of an administrative expense of a kind specified in 11 U.S.C. § 503(b) or § 1114(e)(2) entitled to priority pursuant to 11 U.S.C. § 507(a)(2), including but not limited to: (a) actual and necessary costs and expenses incurred after the Petition Date to preserve the estate and operate the Debtors' business, including wages, salaries, or

commissions for services rendered after the commencement of the Chapter 11 Case; (b) Professional Fee Claims; (c) all fees and charges assessed against the estate under 28 U.S.C. § 1930; and (d) all Allowed Claims that are entitled to be treated as Administrative Claims pursuant to a Final Order of the Court under 11 U.S.C. § 503.

       **a.**     **LSI**

LSI retained Kutner Miller Brinen, P.C. ("KMB") as its bankruptcy counsel. The Court approved LSI's employment of KMB on April 3, 2013. LSI provided KMB a retainer in the amount of $44,693, which was also approved by the Court on April 3, 2013. For the period of January 29, 2013 (Petition Date) through April 30, 2013, KMB has charged approximately $22,034 in attorneys' fees and $91 in costs on behalf of LSI. KMB estimates that the total legal fees and costs for KMB due from LSI will increase by approximately an additional $40,000 as of the estimated date on which the Plan will become effective. The fees could increase or decrease depending on the level of litigation over the Plan and Claims.

LSI retained the law firm of Otten Johnson Robinson Neff + Ragonetti, P.C., to serve as general, non-bankruptcy, legal counsel to address real estate and contract issues ("Otten"). For the period of January 29, 2013 (Petition Date) through June 30, 2013, Otten has incurred approximately $ TBD in fees and costs for legal services performed for LSI.

LSI retained the law firm of Allen & Vellone, P.C. ("Vellone"), to serve as general, litigation counsel to handle issues that are in litigation ("Vellone"). For the period of January 29, 2013 (Petition Date) through June 30, 2013, Vellone has charged approximately $ TBD in fees and costs for legal services performed for LSI.

LSI retained the firm of Structured Finance Solutions, LLC to provide expert analysis and testimony if needed with respect to interest rates and loan analysis with respect to the Plan. The same firm will likely be employed in all three cases. Retainers in the amount of $25,000 per case are being requested.

LSI has employed Roger J. Thiret as a broker with respect to the sale of the LSI Chatfield Farms Estates property. This property is comprised of approximately 23 lots in a subdivision in Jefferson County, Colorado. Mr. Thiret will earn a 6% commission that will be due as the sale of each lot closes.

LSI has employed CBRE, Inc. as a broker with respect to the sale of the property known as PA-13, 13 acres along the Arrowhead golf course in Jefferson County, Colorado. CBRE, Inc. will earn a 5% commission that will be due upon sale of the property.

### b.    LSI Retail

LSI Retail retained Weinman & Associates, P.C. ("Weinman") as its bankruptcy counsel. The Court approved employment of Weinman on February 19, 2013. LSI Retail provided Weinman a retainer in the amount of $25,000, which was approved by the Court on April 3, 2013. For the period of January 29, 2013 (Petition Date) through June 30, 2013, Weinman has incurred approximately $ TBD in attorneys' fees and $ TBD in costs on behalf of LSI Retail. Weinman estimates that the total legal fees and costs will increase by approximately an additional $30,000 as of the estimated date on which the Plan will become effective. The fees could increase or decrease depending on the level of litigation over the Plan and Claims.

LSI Retail retained the law firm of Allen & Vellone, P.C. ("Vellone"), to serve as general, litigation counsel to handle issues that were in litigation ("Vellone"). For the period of January 29, 2013 (Petition Date) through June 30, 2013, Vellone has incurred approximately $ TBD in fees and costs for legal services performed for LSI Retail. Vellone received a retainer in the amount of $25,000 for future services.

LSI Retail retained the firm of Structured Finance Solutions, LLC to provide expert analysis and testimony if needed with respect to interest rates and loan analysis with respect to the Plan. The same firm will likely be employed in all three cases. Retainers in the amount of $25,000 per case will be requested.

LSI Retail has filed to retain the firm of East-West Econometrics, LLC as a real estate appraiser for the Roxborough Center property. The appraisal will cost a flat fee of $4,500 plus time for depositions and testimony will be charged on an hourly basis.

LSI Retail has filed an application to employ Ross Real Estate Ltd. as a brokerage firm for the estate. This firm will handle leasing activity at the Roxborough Center property. LSI Retail entered into a one year listing contract with this firm commencing April 1, 2013.

### c.   CTC

CTC retained Weinman & Associates, P.C. ("Weinman") as its bankruptcy counsel.  The Court approved employment of Weinman on February 19, 2013.  CTC provided Weinman a retainer in the amount of $25,000, which was approved by the Court on April 3, 2013.  For the period of January 29, 2013 (Petition Date) through June 30, 2013, Weinman has incurred approximately $ TBD in attorneys' fees and $ TBD in costs on behalf of CTC.  Weinman estimates that the total legal fees and costs will increase by approximately an additional $20,000 as of the estimated date on which the Plan will become effective.  The fees could increase or decrease depending on the level of litigation over the Plan and Claims.

CTC retained the law firm of Allen & Vellone, P.C. ("Vellone"), to serve as general, litigation counsel to handle issues that were in litigation ("Vellone").  For the period of January 29, 2013 (Petition Date) through June 30, 2013, Vellone has incurred approximately $ TBD in fees and costs for legal services performed for CTC.  Vellone also received a retainer of $25,000 for future services.

### 2.   Tax Claims

Tax Claims are any Claim of a governmental unit for unsecured taxes entitled to priority pursuant to 11 U.S.C. § 507(a)(8).  The following governmental units have Tax Claims:

   a.   **LSI.**   LSI listed the Internal Revenue Service ("IRS") and the Colorado Department of Revenue ("CDR") on its Schedule E for notice purposes.  The IRS filed Proof of Claim No. 4 asserting a priority claim for taxes in the amount of $1,958.18.  The CDR did not file a proof of claim.

   b.   **LSI Retail.**  LSI Retail listed the IRS and CDR on Schedule E for notice purposes.  The IRS filed Proof of Claim No. 4 asserting a non-priority claim in the amount of $200.  The CDR did not file a proof of claim.

   c.   **CTC.**  CTC listed the IRS and CDR on Schedule E for notice purposes.  The IRS filed Proof of Claim No. 1 asserting no claim for taxes.  The CDR did not file a proof of claim.

**B.   Secured Claims.**  A summary of the known Secured Claims for each Debtor's bankruptcy estate is set forth below.

**LSI Retail**

1.      **State Farm Insurance Co. (Class 1.4).**  State Farm Insurance Co. ("State Farm") holds a secured claim against LSI Retail arising from a loan made on approximately December 16, 2005 in the original principal amount of $13,500,000 pursuant to a promissory note of the same date. The loan is secured by a deed of trust and security agreement also dated December 16, 2005.  The note is further secured by an Assignment of Rents and Leases.  All collateral documents relate to the Roxborough Center property.  All collateral documents were recorded in order to perfect the real and personal property liens.  The loan documents were modified by the parties on July 1, 2008 and April 23, 2009.  Additional modifications were completed effective July 1, 2010 and January 10, 2011. The modifications served in part to enhance State Farm's collateral position and provide some benefit to the Debtor with respect to the loan payments.  The monthly payment on the State Farm loan on a pre-petition basis was $97,907.49.  While the Debtor did not make the payments on the loan for February, March, and April, it did begin making regular monthly payments during the Chapter 11 case in April in the amount of $57,195.47 per month.  In addition, on or about February 1, 2013 State Farm withdrew a $97,907.49 post-petition mortgage payment on this account.

2.      **3NP (Class 1.2).**  3NP purchased from First National Bank of Boulder, a loan to LSI Retail that was used to assist it with the development of the Roxborough Marketplace.  The loan has a current outstanding balance of approximately $203,690.44 and it is secured by a first deed of trust encumbering the 1.2 acre undeveloped lot located on Waterton Canyon Road in Douglas County, Colorado.

**CTC**

1.      **Mountain Rising Development (Class 2.3.1 and 2.3.2).**   The Mountain Rising Development ("MRD") claims are based upon two loans that were originally made to CTC and LSI by FirstBank of South Jeffco n/k/a FirstBank.  The first loan was made on or about December 8, 2005 in the original principal amount of $19,500,000 and the second loan was made on or about May 18, 2007 in the original principal amount of $3,425,000.  The two loans are secured by four deeds of trust encumbering real property owned by CTC and LSI.  The two loans and collateral positions were

acquired by MRD on August 27, 2012. The two loans matured on or about September 1, 2012 and the total amount due on the notes as of the petition date is $6,178,885.19. This amount includes all interest, default interest, costs, principal, and attorney fees due as of the petition date according to MRD. The collateral for the MRD loans includes all of the CTC real property consisting of the Conifer Town Center and in the case of LSI the Jefferson Corporate Center, Lot 2D. The Debtors believe that the MRD loans are fully secured based on their total collateral package. The two loans have co-obligors including CTC, LSI, sunset Management Services, Ltd., Alan R. Fishman, and David S. Coppfer.

## LSI

1.      **3NP LLC (Class 3.2).** 3NP acquired its Class 3.2 claim by purchasing a loan and related collateral documents from First National Bank of Omaha, N.A. ("FNB") on or about December 5, 2011. The original Promissory Note is in the amount of $3,000,000 and represents a loan made by FNB to LSI on or about January 10, 2007. The Note matured and was renewed on several occasions. The balance due on the 3NP note as of the petition date was $3,983,273 according to the Proof of Claim filed by 3NP. The Note was secured by several deeds of trust and collateral pledges however, these have changed over time as certain properties have been sold. The current collateral for this Note consists of: a) Chatfield Farms Estate Lot 23; b) 20 acres at 1st and Taft in Loveland , Colorado; and c) PA-13, 13 acres along Arrowhead golf course in Jefferson County, Colorado. LSI values the collateral at $4,900,000 and 3NP is fully secured.

2.      **Alden Financial, Inc. (Class 3.3).** This claim is based upon a Promissory Note dated February 11, 2009 in the original principal amount of £1,000,000. The Note has accrued interest and at the time of the petition date the balance due was £1,246,667.67. While the Note is stated in English pounds, the amount due will be converted to dollars at the time of payment. Given a conversion rate of $1.56 per pound as of June 10, 2013, the total amount due to the Class 3.3 claimant is $1,944,801.57. The claim is secured by a recorded deed of trust dated February 11, 2009. The deed of trust encumbers property owned by LSI and known as Lot 3E, Jefferson Corporate Center.

3.    **Mountain Rising Development (Class 3.5.1-3.5.4).**  The MRD loans include the two set forth above as obligations of CTC plus two additional loans which are described as follows. The third is a loan made to LSI that had a balance due on the petition date in the amount of $676,141.52. The maturity date on this loan is November 1, 2013. The loan is secured by the LSI property known as Jefferson Corporate Center, Lot 2D. The fourth is a loan made to LSI and other co-borrowers including Village at Elk Crossing, LLC. The loan had a balance of $615,669.46 on the petition date and is secured by the LSI property known as the Jefferson Corporate Center, Lot 2D.

4.    **TIC Lending, LLC (Class 3.8).**  This claim arises out of a loan made to the Debtors LSI, LSI Retail, and CTC in January 2013. The amount of the claim is $200,000 plus interest. The loan is secured by certain member interests in LSI Retail, Land Securities Investors VI, LLC and American Property Holdings, LLC.

5.    **UMB Bank (Class 3.9).**  This loan had a balance due as of the petition date in the amount of $955,000. The loan is secured by a deed of trust encumbering property owned by LSI and located at Lot 1, Ken Caryl Retail Center, Jefferson County, Colorado. The loan and security documents are dated and recorded on or about October 13, 2006. The collateral is an operating property and generates income to LSI. LSI is making payments to the lender and has continued making payments through the course of the chapter 11 case pursuant to a stipulation approved by the Court.

**C.**    **Executory Contracts and Unexpired Leases**

On the Effective Date of the Plan, Debtors will assume those executory contracts and unexpired leases, which have not been assumed by Order of the Court prior to the Confirmation Date, as set forth in the Plan. On the date of the entry of an Order confirming the Plan, Debtors shall be the holders of any and all right, title, and interest to the assumed leases and contracts, and as a result, such assumed leases and contracts shall be in full force and effect and shall be binding upon Debtors and the other parties thereto. Confirmation of the Plan shall constitute a determination that the payments to be made to said creditors pursuant to the Plan satisfy all conditions precedent to assumption and assignment set forth in 11 U.S.C. §§ 365(b) and (f). As to any rejection of the leases and executory contracts, on

the Effective Date of the Plan, Debtors will reject these executory contracts and unexpired leases to which it is a party listed in the Plan, which have not been rejected by Order of the Court prior to the Confirmation Date. Executory contracts and unexpired leases will be rejected pursuant to the provisions of 11 U.S.C. § 365. Any executory contract or unexpired lease not assumed in accordance with the Plan shall be rejected. All proofs of claim with respect to claims arising from the rejection of any executory contract or unexpired lease shall be filed with the Court within twenty (20) days after the earlier of: (i) the date of the Court order approving the Debtors' rejection of such executory contract or unexpired lease; or (ii) the Confirmation Date. Any claims not filed within such time shall be forever barred against Debtors, their estates, and property, and as a result, any such Claims shall be disallowed in full. Claims arising from such rejection, to the extent Allowed, shall be treated as non-priority unsecured Claims.

The executory contracts set forth below will all be assumed by the Debtors. In each case the Debtors will make any applicable cure required by the creditor to allow the contract to be assumed. Minimal payments if any are required to assume each contract set forth below. The LSI Retail and CTC executory contracts and unexpired leases are set forth below:

| Contract Party | Description | Assume or Reject | Class |
|---|---|---|---|
| Mike's Building Maintenance, LLC | Service provider | Assume | LSI Retail 1.6.1 |
| Colorado Mechanical Systems Inc. | Service provider | Assume | LSI Retail 1.6.2 |
| Colorado Lighting Inc. | Service provider | Assume | LSI Retail 1.6.3 |
| Always Green, LLC | Service provider | Assume | LSI Retail 1.6.4 |
| Schindler Elevator Corp. | Service provider | Assume | LSI Retail 1.6.5 |
| Liquid Environmental Solutions | Service provider | Assume | LSI Retail 1.6.6 |

| Mike's Building Maintenance, LLC | Service provider | Assume | CTC  2.5.1 |
| Century Link | Service provider | Assume | CTC  2.5.2 |
| ADT/Tyco Security | Service provider | Assume | CTC  2.5.3 |
| Systems Group | Service provider | Assume | CTC  2.5.4 |
| Thyssenkrup Elevator Corp. | Service provider | Assume | CTC  2.5.5 |
| Liquid Environmental Solutions | Service provider | Assume | CTC  2.5.6 |

**D.    Non-Priority Unsecured Claims**

Each of the Debtors has a number of unsecured pre-petition date creditors.  Attached hereto as Exhibit B is a list of general unsecured Classes 1.6.6, 2.4, and 3.10 of LSI Retail, CTC, and LSI respectively.  These exhibits include the amounts listed on the Debtors' schedules, and the amounts asserted by the Creditors in their Proof of Claims.  To the extent the amount filed by the creditor is different than the amount listed on the Debtors' schedules, the amount of the Claim as filed by the creditor is considered in the analysis.  However, each Debtor reserves the right to file claim objections.

The estimated total amount of the unsecured creditors in each Debtor's case, as currently exist, is set forth as follows:

LSI Retail            $155,83 (Subject to revision)

CTC                   $3,559,600    (Subject to revision)

LSI                   $14,220,475  (Subject to revision)

**VI.    DESCRIPTION OF THE PLAN**

**A.    General Description**

The Debtors filed their Joint Plan of Reorganization with the United States Bankruptcy Court for the District of Colorado on May 24, 2013. The Plan provides for the reorganization of the Debtors under Chapter 11 of the Bankruptcy Code. Pursuant to the Plan, the Debtors shall restructure their debts and obligations and shall continue to operate in the ordinary course of business. The Plan provides for the specification and treatment of all creditors and Interest holders of the Debtors. The Plan identifies whether each Class is impaired or unimpaired. A Class is unimpaired only if the Plan leaves unaltered the legal, equitable, or contractual obligations between the Debtors and the unimpaired claimants or Interest holders. The following is a brief summary of the Plan. The actual text of the Plan should be reviewed for more specific detail.

As provided in Section 1123(a)(1) of the Bankruptcy Code, the Priority Administrative and Tax Claims against the Debtors are not designated as classes. The holders of such Allowed Claims will be paid in full and are not entitled to vote on the Plan.

The Plan divides the creditors into separate classes. The classes are set forth as follows:

**<u>LSI Retail</u>**

<u>Class 1.1</u> - All Allowed Unsecured Claims specified in Section 507(a)(4) and 507(a)(5) of the Code as having priority.

<u>Class 1.2</u> – The Allowed Secured Claim held by 3NP secured by a first deed of trust encumbering the 1.2 acre undeveloped parcel on Waterton Canyon Road, Douglas County, Colorado.

<u>Class 1.3.1</u> – The Allowed Secured Claim held by Douglas County or assignee (vacant parcel taxes).

<u>Class 1.3.2</u> – The Allowed Secured Claim held by Douglas County or assignee (Roxborough Market taxes).

<u>Class 1.4</u> – The Allowed Secured Claim held by State Farm Life Insurance Co.

<u>Class 1.5</u> – The Allowed Claims held by unsecured creditors, other than those classified in Classes 1.6.1-1.6.6.

<u>Class 1.6.1</u> – The Allowed unsecured claim held by Mike's Building Maintenance, LLC.

<u>Class 1.6.2</u> – The Allowed unsecured claim held by Colorado Mechanical Systems Inc.

<u>Class 1.6.3</u> – The Allowed unsecured claim held by Colorado Lighting Inc.

<u>Class 1.6.4</u> – The Allowed unsecured claim held by Always Green LLC.

<u>Class 1.6.5</u> – The Allowed unsecured claim held by Schindler Elevator Corp.

<u>Class 1.6.6</u> – The Allowed unsecured claim held by Liquid Environmental Solutions.

<u>Class 1.7</u> – The Interests held by members.

## **CTC**

<u>Class 2.1</u> – All Allowed Unsecured Claims specified in Section 507(a)(4) and 507(a)(5) of the Code as having priority.

<u>Class 2.2</u> – The Allowed Secured Claim held by the Jefferson County Treasurer's office or assigns.

<u>Class 2.3.1</u> - The Allowed Secured Claim held by Mountain Rising Development, LLC secured by the CTC shopping center property (Approximately $3,425,000).

<u>Class 2.3.2</u> - The Allowed Secured Claim held by Mountain Rising Development, LLC secured by the CTC shopping center property (Approximately $2,248,982.78).

<u>Class 2.4</u> – The Allowed Claims held by unsecured creditors, other than those classified in Classes 2.5.1-2.5.6.

<u>Class 2.5.1</u> – The Allowed unsecured claim held by Mikes Building Maintenance, LLC.

<u>Class 2.5.2</u> – The Allowed unsecured claim held by Century Link.

<u>Class 2.5.3</u> – The Allowed unsecured claim held by ADT/Tyco Security.

<u>Class 2.5.4</u> – The Allowed unsecured claim held by Systems Group.

<u>Class 2.5.5</u> – The Allowed unsecured claim held by Thyssenkrup Elevator Corp.

<u>Class 2.5.6</u> – The Allowed unsecured claim held by Liquid Environmental Solutions.

<u>Class 2.6</u> – The Interests held by members.

## **LSI**

<u>Class 3.1</u> - All Allowed Unsecured Claims specified in Section 507(a)(4) and  507(a)(5) of the Code as having priority.

<u>Class 3.2</u> – The Allowed Secured Claim held by 3NP LLC.

Class 3.3 – The Allowed Secured Claim held by Alden Financial Inc.

Class 3.4– The Allowed Secured Claim held by Douglas County Treasurer.

Class 3.5.1 - The Allowed Secured Claim held by Mountain Rising Development secured by Jefferson Corporate Center, Lot 2D.

Class 3.5.2 – The Allowed Secured Claim held by Mountain Rising Development secured by Jefferson Corporate Center, Lot 2D.

Class 3.5.3 – The Allowed Secured Claim held by Mountain Rising Development secured by Jefferson Corporate Center, Lot 2D.

Class 3.5.4 – The Allowed Secured Claim held by Mountain Rising Development secured by Jefferson Corporate Center, Lot 2D.

Class 3.6 – The Allowed Secured Claim held by Jefferson County Treasurer.

Class 3.7 – The Allowed Secured Claim held by Larimer County Treasurer.

Class 3.8 – The Allowed Secured Claim held by TIC Lending, LLC.

Class 3.9 – The Allowed Secured Claim held by UMB Bank.

Class 3.10– The Allowed Unsecured Claims held by unsecured creditors.

Class 3.11– The Interests held by general and limited partners.


**B.    The Claims**

    **1.    Unclassified Priority Claims**

        **a.    Administrative Claims**

The holders of Allowed Claims of the type specified in Section 507(a)(2) of the Bankruptcy Code, including the costs and expenses of administration, shall receive cash equal to the Allowed amount of such Claim or a lesser amount or different treatment as may be acceptable and agreed to by the particular holders of such Claims.  Such Claims shall be paid in full on the Effective Date, or treated as otherwise agreed by the particular holders of such Claims.  Administrative Claims that are allowed by the Court after the Effective Date of the Plan shall be paid upon allowance or as otherwise agreed by the particular holders of such Claims.

All Administrative claims of professionals are subject to Court approval on notice to creditors with an opportunity for a hearing.  Certain professional fees may be paid pursuant to interim fee applications and upon Court allowance.  The professional fees set forth above and below are the total fees expected to remain in the case as of the estimated Confirmation Date of the Plan, assuming minimal litigation over the Plan, and the payments that have been made during the case through retainers or otherwise.

**LSI**

| Professional | Approximate fees & costs through June 30, 2013 | Estimated fees & costs as of the estimated Confirmation Date (September 2013) |
|---|---|---|
| Kutner Miller Brinen, P.C | $_____ in attorneys' fees and $_____ in costs | $_____ for bankruptcy legal services |
| Allen & Vellone, P.C | $ | $ |
| | $ | $ |

**LSI Retail**

| Professional | Approximate fees & costs through June 30, 2013 | Estimated fees & costs as of the estimated Confirmation Date (September 2013) |
|---|---|---|
| Weinman & Assoc., P.C | $ | $_____ for bankruptcy legal services |
| Allen & Vellone, P.C | | |
| | | |

**CTC**

| Professional | Approximate fees & costs through June 30, 2013 | Estimated fees & costs as of the estimated Confirmation Date (September 2013) |
|---|---|---|
| Weinman & Assoc., P.C | $ | $_____ for bankruptcy legal services |

29

| Allen & Vellone, P.C | | |
|---|---|---|
| | | |

**2.      Tax Claims**

Tax Claims are any Claim of a governmental unit for unsecured taxes entitled to priority pursuant to 11 U.S.C. § 507(a)(8). While the unsecured priority tax claims are minimal, the secured real property tax claims for each of the Debtors are significant and are explained later in this Disclosure Statement. As is set forth above, the following governmental units have Tax Claims:

   **a.**  **LSI.**  LSI does not anticipate any priority tax claims.

   **b.**  **LSI Retail.**  LSI Retail does not anticipate any priority tax claims.

   **c.**  **CTC.**  CTC does not anticipate any priority tax claims.

Tax Claims will be paid on the Effective Date of the Plan or in monthly payments on an amortized basis over a period that does not exceed five (5) years from the Petition Date with interest at the appropriate rate set by applicable statute.

**3.      Classified Priority Claims**

**a.      Class 1.1, 2.1, and 3.1 Priority Claims**.  Allowed Class 1.1, 2.1, and 3.1 Priority Claims shall be paid in full on the Effective Date. Such claims are for certain pre-petition wages and employee Claims are more particularly described in Sections 507(a)(4) and 507(a)(5) of the Code. The Debtors do not expect that any claims will exist in these Classes.

### 4. Secured Claims

**LSI Retail**

| Class | Creditor | Claim | Collateral | Treatment | |
|-------|----------|-------|------------|-----------|---|
| 1.2 | 3NP | $236,417 | 1.2 acre lot | 3% interest only, 7 years | |
| 1.3.1 | Douglas Cty or assignee | $395,061 | 8351-8361 Rampart Range Rd. Littleton, CO | Statutory interest, 60 month amortization | |
| 1.3.2 | Douglas Cty or assignee | | | | |
| 1.4 | State Farm Life Ins. Co. | $13,138,776 or less depending upon value | 8351-8361 Rampart Range Rd. Littleton, CO | | |

**CTC**

| Class | Creditor | Claim | Collateral | Treatment | |
|-------|----------|-------|------------|-----------|---|
| 2.2 | Jefferson Cty or assignee | $147,926.72 | 27175 Main St. site, Jefferson Cty | statutory interest, 60 month amortization | |
| 2.3.1 | Mountain Rising Devel. | $3,000,000 | 27175 Main St. site, Jefferson Cty | 3.25% interest, 25 year amortization and 7 year balloon | |
| 2.3.2 | Mountain Rising Devel. | See 2.3.1 | | See 2.3.1 | |

**LSI**

| Class | Creditor | Claim | Collateral | Treatment | |
|-------|----------|-------|------------|-----------|---|
| 3.2 | 3NP | $3,983,273 | Chatfield Farms Est., Lot 23; 50 acres Loveland, CO; 20 acres Loveland; 13 acres Arrowhead Golf Course | 3% interest only, 7 years; paid 85% net proceeds on collateral sale | |
| 3.3 | Alden Financial Inc. | $1,246,668 | Jefferson Corp. Center, Lot 2D | 3% interest only, 7 years; paid 85% net proceeds on collateral sale | |
| 3.4 | Douglas Cty/ assignees | $251,328 $31,495 $253,906 $284,588 | Various parcels in County | Statutory interest; 60 month amortization | Assignees: Dennis Larratt; Adair Kowach; Raul Cosio |
| 3.5.1 | Mtn. Rising Development | $3,920,000 | Jefferson Corp. Center, Lot 2D | 3.25% interest, 25 year amortization; 5 year balloon | |
| 3.5.2 | Mtn. Rising Development | See 3.5.1 | Jefferson Corp. Center, Lot 2D | See 3.5.1 | |
| 3.5.3 | Mtn. Rising Development | See 3.5.1 | Jefferson Corp. Center, Lot 2D | See 3.5.1 | |
| 3.5.4 | Mtn. Rising Development | See 3.5.1 | Jefferson Corp. Center, Lot 2D | See 3.5.1 | |

| 3.6 | Jefferson Cty. | $431,233 | | Statutory interest; 60 month amortization | |
| 3.7 | Larimer Cty. | $64,419 | | Statutory interest; 60 month amortization | |
| 3.8 | TIC Lending | $200,000 | | 2% interest; 60 month amortization | |
| 3.9 | UMB Bank | $954,191 | 3 acres at Chatfield & Kipling | Unimpaired | |

**5.    General Unsecured Claims.**

    **a.    LSI Retail.**  Classes 1.5 and 1.6.1 through 1.6.6 consist of those unsecured creditors of LSI Retail who hold Allowed Claims.

    **b.    CTC.**  Classes 2.4 and 2.5.1 through 2.5.6 consist of those unsecured creditors of CTC who hold Allowed Claims.

    **c.    LSI.**  Class 3.10 consists of the unsecured creditor class of LSI.  This class includes the deficiency claims of secured creditors of LSI Retail and CTC who have the claims guaranteed by LSI.

In the case of the claims in the LSI Retail and CTC Classes 1.6.1 through 1.6.6 and 2.5.1 through 2.5.6, the claims are all unsecured claims with respect to pre-petition past due amounts under contracts that the CTC and LSI Retail Debtors expect to assume under the terms of the Plan.  As a result they have been separately classified because the law requires, in the case of contract assumption, that the contract arrearage be cured or paid in full at the time of contract assumption.  The pre-petition claims for the creditors in these classes will be paid in full shortly following Plan confirmation.

The general unsecured creditor claims that are allowed for the three Debtors in Classes 1.5, 2.4, and 3.10 will be paid in full under the Plan.  The claims will be amortized and paid over a ten year period at an interest rate of 1% per annum.  Monthly payments will be made and notwithstanding the ten year amortization term, the balance due on the claims

33

will balloon and be due on the seven year anniversary of the Effective Date of the Plan. In addition to the amortized payments made by the Debtors, the unsecured creditors may be paid off faster in the event that any Avoidance Actions are pursued and a recovery is made. However, at the present time the Debtors do not expect that they will recover on any Avoidance Actions.

6. **Interests.**

a. **Class 1.7, Interests in LSI Retail**. Class 1.7 includes the Interests in LSI Retail held by the pre-confirmation members. Class 1.7 is unimpaired by the Plan. On the Effective Date of the Plan all Class 1.7 interests shall be retained by the existing interest holders subject to the terms of the Plan.

b. **Class 2.6, Interests in CTC**. Class 2.6 includes the Interests in CTC held by the pre-confirmation members. Class 2.6 is unimpaired by the Plan. On the Effective Date of the Plan all Class 2.6 interests shall be retained by the existing interest holders subject to the terms of the Plan.

c. **Class 3.11, Interests in LSI.** Class 3.11 includes the Interests in LSI held by the pre-confirmation partners. Class 3.11 is unimpaired by the Plan. On the Effective Date of the Plan all Class 3.11 interests shall be retained by the existing interest holders subject to the terms of the Plan.

C. **Management and Means for Execution of the Plan.**

Pursuant to the Plan, the Debtors shall restructure their debts and obligations and continue to operate in the ordinary course of business. Funding for the Plan shall be from income derived from ongoing operations and asset sales.

The individual with primary responsibility for operating the Debtors post-Plan confirmation is Alan R. Fishman. Mr. Fishman has managed the Debtors operations since approximately 1995. Mr. Fishman graduated from the University of Massachusettes-Amherst Campus in 1974 with a BS degree in accounting and he received his MBA in 1978. Mr. Fishman has extensive work experience as an accountant and has substantial real estate accounting and development experience. His experience includes the construction, management, and development of apartments, condominiums,

single family residences, and office buildings.  He has also worked in the oil and gas industry.  In 1995 he moved to Colorado and formed Sunset management Services, Inc. which is the General Partner of LSI.  Mr. Fishman has been involved in all of the LSI acquisitions, development projects, land use and planning decisions, and the chapter 11 case.  He has also served as a Director of the Ken-Caryl Master Association from January 1998 until 2000 and was appointed by the Governor of Colorado in 2000 to the Board of Directors of the Office of Consumer Council.  Mr. Fishman is paid by the Debtors at the rate of $200 per hour.

## VII.    PLAN FEASABILITY

The Debtors' Plan is feasible based upon the Debtors' ability to achieve the various components of the Plan.  The Debtors expect to have sufficient cash on hand on the Effective Date of the Plan to meet all payments due at that time.  The balance of the payments due under the Plan will be derived from ongoing business operations and the sale of real estate assets.  The Debtors will reduce and restructure their secured debt service, which will enable them to operate profitably.

**LSI Retail**

LSI Retail will be supported by the ongoing operation of the Roxborough Marketplace.  This retail and office center consists of over 100,000 square feet of improved area on a site that totals 15.65 acres located in a residential area of northwestern Douglas County, Colorado.  The property is substantially leased and generates a monthly cashflow.  The Center will support the operating expenses and the restructured debt service payments due to State Farm.  Attached to this Disclosure Statement as Exhibit C is a projection showing the operating income and expenses of the Center and the Debtor's operation post-confirmation.

**CTC**

The Conifer Town Center development also generates rental income that is used to support the ongoing operation of the project.  CTC expects that through its leasing program, rents will increase over the duration of the Plan and allow CTC to pay the operating expenses of the Company and service the restructured MRD secured debt.  Attached to this Disclosure Statement as Exhibit D is a projection showing the operating income and expenses of the CTC operation and the Debtor's operation post-confirmation.

**LSI**

LSI does have some rental property that produces a monthly rental income however it is not sufficient to service the debt service requirements of the Company. Most of LSI's assets are not income producing and LSI is dependent upon the sale of real estate assets to generate cash flow to service debt. LSI will be able to generate increasing amounts of cash flow from sales particularly in and improving market for real estate sales and development.

LSI currently has a contract for the sale of 23 single family residential estate lots, generally referred to as the Chatfield Farms Estate Lot 23. This contract is for sale of the lots to a residential builder who will have the ability to close on the lots on an ongoing basis as the builder closes sales or chooses to purchase lots. The total proceeds expected from the sale of the lots is approximately $3,425,000. Once taxes of approximately $900,000 and closing costs of $239,750 are deducted, LSI should have net proceeds of approximately $2,285,250. LSI then has an agreement with the secured lender on this property, 3NP, to pay 3NP 85% of the proceeds or $1,942,463 and to retain 15% or $342,687 for LSI use and operations. The numbers provided are approximate and different costs and expenses for secured claims such as that of the sanitation district will also have to be factored into the analysis.

LSI has also retained CB to auction the lot known as PA-13 located at Arrowhead golf course. LSI expects the lot to sell for approximately $1,000,000. This lot is also encumbered by a lien held by 3NP and is subject to the same agreement with 3NP which allows for a split of the net proceeds of sale to be paid 85% to 3NP and 15% to LSI. Given the expected numbers from this sale, the commission should be $60,000 and taxes and fees $60,000 leaving net proceeds of $880,000 to be split $748,000 to 3NP and $132,000 to LSI.

LSI expects both of the sales set forth above to be closed within the first two years of the Plan. The sales will generate approximately $474,687 in proceeds for LSI use to support operations and Plan payments. LSI also plans to list the properties owned by LSI Retail I, LLC and LSI Retail III, LLC for sale within the first year of the Plan. The estimated gross sales price for the two properties is expected to approximate $21,000,000. Closing costs and a prepayment penalty will approximate $1,260,000 and $275,000 respectively. Secured debt payments are estimated at $13,000,000 leaving the net proceeds to be split between LSI and its other member Pantrust. LSI's

share of the net sale proceeds would be $1,119,750.

LSI is also looking forward to sales of lots in California in which it has an interest through its interest in APH Holdings LLC which has an interest in vacant commercial lots in Fresno, California. Additional properties may be sold at any time depending upon market conditions and prospective buyer interest.   A Schedule of anticipated lot sales is attached to the LSI Projections that are an exhibit to this Disclosure Statement.  While sales are anticipated, they are heavily dependant upon market conditions and interest from prospective buyers.

Attached to this Disclosure Statement as Exhibit E is a projection of the Debtor's operations following confirmation of the Plan (years 2014-2016).  The Projections demonstrate that the Debtors will be able to meet their obligations under the terms of the Plan.  Historic information is found in Exhibit F, the Debtors' financial statements for the year 2012.  A summary of the Monthly Operating Reports (February 2013 through May 2013), showing income and expenses during the course of the chapter 11 cases, is attached as Exhibit G for each of the Debtors.

## VIII.   RISK TO CREDITORS

This Disclosure Statement contains statements which look into the future.  There is no way to determine the accuracy of these statements.  Debtors have attempted to be conservative in their analysis and believe that the Plan as proposed offers the best option for creditors.  The principal alternative to the Debtors' reorganization under Chapter 11 is a conversion of the cases to Chapter 7 of the Bankruptcy Code.  As set forth in Section X below, liquidation of the Debtors will assure a distribution to unsecured creditors less than that proposed by the Plan.

## IX.   TAX CONSEQUENCE

Debtors are not providing tax advice to creditors or interest holders.  **U.S. Treasury Regulations require you to be informed that, to the extent this section includes any tax advice, it is not intended or written by Debtors or their counsel to be used, and cannot be used, for the purpose of avoiding federal tax penalties.**  Each party affected by the Plan should consult its own tax advisor for information as to the tax consequences of Plan confirmation.  Generally, unsecured creditors should have no tax liabilities as a result of Plan confirmation.  The recovery of each creditor

is payment on account of a debt and generally not taxable, unless the creditor wrote off the debt against income in a prior year. In such cases, income may have to be recognized. Interest holders may have very complicated tax effects as a result of Plan confirmation. Pursuant to 11 U.S.C. § 1146(c), the issuance, transfer, or exchange of notes or equity securities under the Plan by the Debtors, the creation of any mortgage, deed of trust, or other security interest, the making or assignment of any lease or the making or delivery of any deed or instrument of transfer therewith, in furtherance of, or in connection with, the Plan or the Agreements shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

## X.      LIQUIDATION ANALYSIS

The principal alternative to a debtor's reorganization under Chapter 11 is a conversion of the cases to Chapter 7 of the Bankruptcy Code. Chapter 7 requires the liquidation of the debtor's assets by a Trustee who is appointed by the United States Trustee's office. In a Chapter 7 case, the Chapter 7 Trustee would take over control of the debtor's assets. The assets would be liquidated and the proceeds distributed to creditors in the order of their priorities. In this case, all of the Debtors' assets of any consequence are subject to liens that exceed the value of the asset, or the value of such assets is included in the distribution to creditors. The Debtors' proposed Plan of Reorganization will yield a payment in full to all creditors. A Liquidation Analysis for the Debtors is attached as Exhibit H.

## XI.     EVENTS DURING THE CHAPTER 11 CASE

**LSI Retail**

State Farm filed a Motion for Relief From the Automatic Stay on May 7, 2013. State Farm sought relief from the Court to enable it to exercise its rights and remedies pursuant to its loan and collateral documents. LSI Retail filed an objection to the motion and LSI joined the objection and asserted its own reasons why relief should not be granted. State Farm claimed in its motion, among other things, that relief should be provided because the LSI Retail case was filed in bad faith in that the relief was not really needed, the Debtor had no equity in the Roxborough Center property and it was not necessary for an effective reorganization, and for other cause. The Debtor disputes all of the

State Farm claims.  The preliminary hearing was set for May 29, 2013 but was continued for approximately one month to enable the parties time to resolve their differences.  The new hearing date is set for July 10, 2013.

**LSI**

**Sale Contracts.**  LSI entered into two contracts for the sale of real estate assets during the course of the chapter 11 case.  The first contract is for the sale of the 23 single family residential losts located at Section 35, Township 6 South, Range 69 West of the 6th P.M., Douglas County, Colorado also known as the Chatfield Farms Estate Lot 23.  The sale is to a builder residential home developer and over time, if all of the lots are acquired, the gross sale proceeds should approximate $3,425,000.  Several objections to the sale motion were filed in Court and the Debtor is in the process of resolving the objections.  The second contract is for the sale of property located at 9883 W. Chatfield Ave., Littleton, Colorado.  The property is improved with a Conoco gasoline service center.  The sale price is $1,300,000.

(Intentionally left blank)

39

Dated: June 24, 2013

LSI RETAIL I, LLC


By: ___*/s/ Alan R. Fishman*___
     Alan R. Fishman, Manager


CONIFER TOWN CENTER, LLC


By: _____*/s/ Alan R. Fishman*_____
     Alan R. Fishman, Manager




LAND SECURITIES INVESTORS, LTD.

By:  Sunset Management Services, Inc. its general

     partner

     By: __*/s/ Alan R. Fishman*_____
        Alan R. Fishman, President

Kutner Miller Brinen, P.C. ("KMB") has acted as legal counsel to Land Securities Investors, Ltd. and Weinman & Associates, P.C. ("Weinman") has acted as legal counsel to LSI Retail II, LLC and Conifer Town Center, LLC on bankruptcy matters during these Chapter 11 cases. This Disclosure Statement has been prepared with information provided primarily by the three Debtors. The information contained herein has been approved by the Debtors. Neither KMB nor Weinman have made any independent investigation as to the veracity or accuracy of the statements contained herein.

KUTNER MILLER BRINEN, P.C.

By: ___*/s/ Lee M. Kutner*_____
  Lee M. Kutner (#10966)

  303 East 17th Avenue, Suite 500
  Denver, CO 80203
  Telephone: 303-832-2400
  Telecopy: 303-832-1510
  Email: lmk@kutnerlaw.com

WEINMAN & ASSOCIATES, P.C.

By: ___*/s/ Jeffrey A. Weinman*___
  Jeffrey A. Weinman
  730 17th Street, Suite 240
  Denver, CO 80202
  Telephone: 303-572-1010
  Telecopy: 303-572-1011
  Email: weinman@weinmanpc.com